United States District Court
Southern District of Indiana
Indianapolis Division

BRIAN ELKINS and ANNIE ELKINS, individually, and on behalf of all others similarly situated,

*Plaintiffs*,

v.

SOUTHEASTERN INDIANA HEALTH MANAGEMENT INC d/b/a COLUMBUS REGIONAL HEALTH,

*Defendant*

Cause No. 1:23-cv-01117-JRS-TAB

[Removal from Marion County Superior Court, Indiana, no. 49D01-2305-PL-020792]

## Defendant's Memorandum Opposing Remand

Southeastern Indiana Health Management, Inc. d/b/a Columbus Regional Health[1] (the Hospital) removed this case, following the directly on-point decisions approving substantively identical removals in *Doe I v. UPMC*, 2020 WL 4381675, at *7 (W.D. Pa. July 31, 2020) and *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *2 (N.D. Ohio Oct. 30, 2020). The Elkinses now seek remand, with fees, describing these Judges' positions as "hav[ing] no basis in fact or law." ECF No. 17 p. 2. The Elkinses claim to have a "mountain of authority" on their side, *id.*, but none of that authority comes from this Circuit. The Elkinses—having voluntarily dismissed their nearly-identical complaint in S.D. Ind. cause no. 1:23-cv-765-TWP-MKK and refiled under a new cause in state court, unnecessarily forcing the Hospital to incur the expense of removing the case a second time—now accuse the Hospital of vexatiously multiplying the litigation and causing delay. ECF No. 17 p. 2.

[1] Incorrectly named by Plaintiffs.

Across the nation, plaintiffs are filing substantively identical complaints against hospitals raising the same Meta Pixel concerns. Hospitals have responded with notices of removal, all of which present the same story of how hospitals have been ensnared in these lawsuits based on their response to and participation in the federal directive to create a nationwide electronic ecosystem of accessible health records. One of two things must be true: either hospitals across the nation themselves decided, all at once and in tandem, to engage in the conduct plaintiffs like the Elkinses challenge; or a federal directive impacting hospitals across the nation has placed the hospitals into similar positions. The latter is more plausible than the former; removal is appropriate.

**Facts**

As a threshold matter, the Elkinses' "Factual Background" cites only to their own complaint's allegations. At issue here, however, are the removal allegations in the Hospital's Notice of Removal, which are subject to the same liberal pleading requirements that are applied to other matters of pleading. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018) ("the standard in assessing removal allegations under § 1442(a) starts with Rule 8(a)'s short and plain statement requirement"). The propriety of removal is decided on the Hospital's removal allegations; deciding it based on the Elkinses' allegations would be legal error.

The United States is unique amongst industrialized nations in that it does not have a nationalized health care system. See Bruce Vladeck, Universal Health Insurance in the United States: Reflections on the Past, the Present, and the Future, 93(1) Am. J. Public Health 16, (January 2003). And yet health care spending in the United States consists of roughly a fifth of the nation's Gross Domestic Product. Centers for Medicare and Medicaid Services, National Health

Expenditures 2021 Highlights, (available at https://www.cms.gov/files/document/highlights.pdf) (last accessed, August 2, 2023). Given its importance to the national economy, the federal government is actively involved in shaping national health care policy. *See, e.g., Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). When the federal government seeks to implement a new federal healthcare policy—like the digitization of medical records that patients can access online through their own web browser—there is often no government agency to directly implement the policy. Instead, hospitals and other healthcare providers "take[] on a job that the government would otherwise need to do itself." ECF No. 17 p. 6 (citing *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 942 (7th Cir. 2020)).

In 2004, President Bush, by executive order, established the National Health Information Technology Coordinator ("ONC") to incentivize "nationwide implementation of interoperable health information technology in both the public and private health care sectors." See Exec. Order 13335 (Apr. 27, 2004), available at https://www.govinfo.gov/content/pkg/WCPD-2004-05-03/pdf/WCPD-2004-05-03-Pg702.pdf. Congress then codified the ONC in the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH Act"). See 123 Stat. 115, 247 (2009) (codified at 42 U.S.C. § 300jj-31). As a result, Congress allocated billions of dollars to the Centers for Medicare & Medicaid Services ("CMS") to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id.*

Furthermore, private providers receive guidance from the ONC, including five-year strategic plans. For example, in the 2015–2020 plan, ONC dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build

a culture of electronic health information access and use." ONC, Federal Health Information Technology Strategic Plan 2015-2020, available at https://www.healthit.gov/sites/default/files/9-5-federalhealthitstratplanfinal_0.pdf, last visited April 12, 2023.

ONC noted in the 2020-2025 plan that the federal government and private sector "have worked together to help digitize health information and healthcare." ONC, Federal Health Information Technology Strategic Plan 2020-2025, available at https://www.healthit.gov/sites/default/files/page/202010/Federal%20Health%20IT%20 Strategic %20Plan_2020_2025.pdf. The CMS's "Meaningful Use" program (now known as the Promoting Interoperability Program, or "PIP"), 42 C.F.R. § 495.2-495.370, aims to increase patients' "meaningful use" and engagement with electronic health records. The program is essential to the federal government's goal.

Indeed, the PIP mandates that providers meet specific criteria to receive full Medicare reimbursement, including an interoperable patient portal. Providers receive incentive payments if they can reach a certain level of engagement with electronic health record use through the patient portal. It is suggested that providers implement patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records. See, e.g., ONC, Patient Engagement Playbook, available at https://www.healthit.gov/playbook/pe/introduction/ ("Patient portals hold enormous potential to improve patient care and practice workflow.").

To best optimize portals, the ONC has stated that they "must be engaging and user-friendly." Furthermore, ONC stated "how a patient portal helps achieve meaningful use requirements" and how a provider can "actively promote and facilitate portal use." ONC, How to Optimize Patient Portals for

Patient Engagement available at https://www.healthit.gov/sites/default /files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

CMS maintains its own patient portal for individuals who access care through traditional Medicare—MyMedicare.gov. Similarly, the Department of Veteran Affairs ("VA") maintains its own portal for veterans, My HealtheVet. Leading by example, CMS relies on third-party marketers, including Facebook, to optimize individual engagement with the portal. See generally Medicare.gov, Privacy Policy, available at https://www.medicare.gov/privacy-policy, last visited April 12, 2023. CMS identifies over 20 third parties that it uses for advertising, web analysis, social media outreach, and privacy management in conjunction with Medicare.gov and MyMedicare.gov. *See id.*, Privacy Information Regarding Third-Party Services, available at https://www.medicare.gov/third-party-privacy-policies.

Notably, this would include many of the same third-party cookies and source code alleged as unlawful in the Complaint. See id. See also HHS, Third Party Websites and Applications Privacy Impact Assessment–Facebook Ads (Sept. 4, 2018) available at https://www.hhs.gov/pia/third-party-websites-and-applications-pia-facebook-ads.html, last visited April 12, 2023 (illustrating how CMS engages Facebook to "place[] a cookie or pixel . . . for conversion tracking on certain pages of CMS website. [This] allows Facebook Ads to measure the performance of CMS advertisements based on consumer activity and to report the ad performance to CMS.").

In what no one could plausibly argue is a coincidence, as the federal government's PIP has been implemented nationwide, lawsuits (sometimes word-for-word identical with the Elkinses') have likewise spread nationwide. *See, e.g. Kurowski et al. v. Rush System For Health*, No. 22 C 5380 (N.D. Ill. Mar. 2, 2023); *Hartley v. University Of Chicago Medical Center et al.*, Case No. 1:22cv5891 (N.D.

Ill); *In Re Advocate Aurora Health Pixel Litigation*, Case No. 2:22cv1253 (E.D. Wis); *Doe v. Meta Platforms, Inc.*, No. 22-cv-03580-WHO (N.D. Cal. Dec. 21, 2022); *Yeisley v. University Of Iowa Hospitals & Clinics*, No. 3:23-cv-25 (S.D. Iowa); *Doe I et al. v. Google LLC*, Case No. 5:23-cv-2431 (N.D. Cal.).; *Blanford et al. v. UofL Health, Inc.*, Case No. 3:23-cv-192 (W.D. Ky.).

Indeed, another plaintiff has filed nearly identical allegations as the Elkinses here, under Marion County cause number 49D01-2307-MI-27184, which the Hospital has removed under S.D. Ind. cause number 1:23-cv-01385-JRS-KMB. The Hospital has moved to consolidate the two cases, given the extensive overlap. ECF No. 19. Unlike the Elkinses, who have filed three different pleadings in an attempt to minimize the federal character of this dispute, the Zeigler plaintiffs tacitly concede that this is a national issue, as they have sought a nationwide class. *See* ECF No. 20-1 ¶ 139.[2]

## Argument

Jurisdiction exists in this Court under 28 U.S.C. §§ 1442(a) (federal officer removal) and 1331 (federal question removal).

### 1. Federal officer removal.

Section 1442(a)(1) provides that "[a] civil action commenced in a State court against … [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may be removed to federal court. "The provision is an exception to the 'well-pleaded complaint' rule, which provides that for non-diversity cases to be removable, the complaint must establish that the case arises under federal law." *Rodas v. Seidlin*,

[2] The Elkinses' attempt to artfully plead around the federal nature of this dispute is precisely why federal officer removal is an exception to the well-pleaded complaint rule. *Rodas v. Seidlin*, 656 F.3d 610 (7th Cir. 2011).

656 F.3d 610, 616–17 (7th Cir. 2011). The forebear of Section 1442(a)(1) was enacted near the end of the War of 1812, in "an attempt to protect federal officers from interference by hostile state courts." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). One of its primary purposes, the history "clearly demonstrates," was to have federal officers' defenses to state-law actions litigated in federal courts. *Willingham v. Morgan,* 395 U.S. 402, 407 (1969). "In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Id.*

This provision, however, extends beyond officers on the payrolls of the federal government; the "statute allows defendants to remove suits for certain actions that they took while acting under federal officers." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1179 (7th Cir. 2012). The federal officer removal statute is to be broadly construed, and removal should be permitted when defendants are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932). The Seventh Circuit has noted that private parties (as opposed to federal officers) bear no "special burden" to establish jurisdiction; to the contrary, "the statute has historically authorized removal by private parties without qualification." *Ruppel*, 701 F.3d at 1180. "The Supreme Court's jurisprudence teaches that the policy in favor of federal officer removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

Courts look at four elements: whether the removing party is a (1) "person" (2) "acting under" the United States, its agencies, or its officers (3) that has been sued "for or relating to any act under color of such office," and (4) has a colorable federal defense to the plaintiff's claim. *Ruppel*, 701 F.3d at 1180–81. The Elkinses challenge only elements (2)–(4). *See generally* ECF No. 17.

### 1.1. Through the PIP, the Hospital helped achieve an end the federal government otherwise would have needed to accomplish on its own.

Both sides agree: "The requisite relationship exists when the removing defendant takes on a job that the government would otherwise need to do itself." ECF No. 17 p. 6; *Ruppel*, 701 F.3d at 1181 ("Here, CBS worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete").

As detailed extensively in the Hospital's Notice of Removal—and as the Elkinses do not seem to challenge—the federal government recently set for itself the end of creating a nationwide system of medical health records that would be accessible from patients' own web browsers. "The federal government, as one of the largest purchasers of healthcare services, 'has emphasized the important role that health [information technology] plays in improving both the quality and efficiency of healthcare in the United States.'" *UPMC*, 2020 WL 4381675, at *5 (citation omitted).

Historically, patients' medical records existed solely in paper format; or, when digitized, the records existed within a hospitals' own private servers. In other words, a nationwide electronic ecosystem of accessible health records is not something that already existed, but needed regulation; it is something that needed to be created in the first place.

The healthcare market in the United States, however—and uniquely amongst industrialized nations—consists of private (or at least non-federal) actors. The federal government cannot feasibly meet the end[3] it set for itself on its own; instead, it "uses" entities like the Hospital "to achieve [that] end it would have

[3] The Elkinses claim the PIP involves mere "goals." ECF No. 17 p. 9. The Elkinses do not explain the between "goals" and "ends"—to the contrary, these are synonyms.

otherwise used its own agents to complete." *Ruppel*, 701 F.3d at 1181. Applying this Circuit's precedents, that means the Hospital is acting under a federal officer for purposes of the removal statute.

#### 1.1.1. The Hospital is not merely complying with regulations; it is helping to produce something the federal government wants.

To avoid this simple result, the Elkinses have misconstrued the Hospital's position. The Elkinses characterize the Hospital as merely complying with the law. ECF No. 17 p. 6–8. The Elkinses want the Hospital's removal allegations to fall under *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007), where the Supreme Court held that a cigarette manufacturer's existence in a highly-regulated industry did not, by itself, establish that the manufacturer acted under a federal officer. *See also Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022) (extensive regulation of nursing homes does not itself create federal jurisdiction); *Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015) (extensive regulation of airplane manufacturing does not itself create federal jurisdiction).

But the Hospital's argument here is not that it is merely complying with the law, nor that it is merely subject to federal regulation. Rather, through the PIP, the federal government has tasked hospitals with *creating* a nationwide digital ecosystem of electronic health records.

This distinction between *regulation* and *creation* was explicitly recognized by the Supreme Court in *Watson*. Phillip Morris noted that removal was found appropriate for private entities with an "unusually close" relationship with the federal government "involving detailed regulation, monitoring, or supervision." Phillip Morris argued that cigarette manufacturers face similar regulation, monitoring, or supervision. The Court distinguished that removal is appropriate in the former circumstances because the private party "is helping the

Government to produce an item that it needs. The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Watson*, 551 U.S. at 153.

The same is true here—through its participation in the PIP, the Hospital is helping the federal government produce something the federal government desires: a nationwide electronic ecosystem of accessible medical records. This reality firmly distinguishes this case from the results in *Watson*, 551 U.S. at 153, where the federal government was not trying to produce cigarettes; *Martin*, 37 F.4th at 1213, where the federal government was not trying to produce nursing homes; and *Lu Junhong*, 792 F.3d at 805, where the federal government was not trying to produce airplanes. None of the out-of-circuit Pixel cases cited by the Elkinses give appropriate consideration to this distinction, even though it formed a core aspect of the Supreme Court's opinion in *Watson.*

This distinction is also why removal does not "run[] the risk of seriously disturbing the constitutional role of federal courts as courts of limited jurisdiction," contrary to the Elkinses' argument. ECF No. 17 p. 11. In the federal officer removal statute, Congress has distinguished between those producing something for the government, versus those complying with governmental regulations; removal is proper for the former but not the latter category.

Applying these principles, the Seventh Circuit reversed a district court's improper remand in *Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020). The case involved claims that a manufacturer caused the release of environmental contaminants. The manufacturer removed the case to federal court on the basis that the pollution related to the war equipment it manufactured for the government. "Without the aid of ISR, the government would have had to manufacture the relevant items on its own. For these reasons, this is not simply a case of compliance, but *assistance*." *Id.* at 942 (emphasis original).

The same is true here. The Hospital is not merely complying with regulations; it is *assisting* the federal government manufacture a nationwide electronic health record infrastructure, one the government would otherwise need to manufacture on its own.

**1.2. The Hospital's conduct relates to actions under color of federal office.**

The second challenged element is whether the Hospital is being sued for or relating to any act under color of federal office. *Ruppel*, 701 F.3d at 1180–81. Notably, courts previously demanded a "causal connection" for this element. In *Baker*, however—based on recent amendments to the statute—the Seventh Circuit jettisoned that narrow approach, now requiring only *a connection or association* between the act in question and the federal office. 962 F.3d at 943.

In this case, there is at a minimum a connection or association between the Elkinses' lawsuit and the PIP. The Elkinses complain of web trackers capturing electronic medical information. Through the PIP, the federal government has directed hospitals and health care providers to digitize medical information and make it accessible through the internet. The connection or association between the two is obvious.

**1.2.1. The Elkinses' attempt to narrowly define this element has been rejected by the Seventh Circuit.**

The Elkinses' motion for remand repeatedly misapplies this law. For instance, the Elkinses say "Defendant does not allege or cite anything to suggest the federal government required it to (or the federal government would otherwise have to): transmit PII/PHI to third-party advertising companies without patients' consent; maintain its website or online portal in a certain way; or utilize a specific type of pixel or cookie." ECF No. 17 p. 8. The Elkinses similarly say, "there is no connection between Defendant's purported reliance on a federal incentive program (which give rise to its 'official duties') and Defendant's use of

a hidden tool that secretively collects information from users of its website and passes it on to third parties to help it better target their marketing efforts." *Id.* p. 12.

The Elkinses' attempt to narrowly frame the "relating to" removal element matches an argument rejected in *Baker*, 701 F.3d at 944. In that environmental contamination case, the plaintiffs argued that even if the defendant was a wartime manufacturer, the federal government did not order the manufacturer to pollute the land; nor was there a showing that the pollution was in fact tied to a wartime command or directive from the government. The Seventh Circuit found the plaintiffs might have been factually correct on both points, but that it did not matter for removal purposes: "To be sure, they have raised serious questions about whether the Companies' pollution that allegedly caused the Residents' injuries flowed from the Companies' specific wartime production for the federal government or from their more general manufacturing operations outside those confines. *But those are merits questions that a federal court should decide*." *Id.* (emphasis added).

Under *Baker*, the question is not whether the Hospital improperly disclosed private information at the direction of the federal government. Indeed, the question is not even whether the Hospital improperly disclosed any information at all. The Hospital denies the accusation, but regardless, these are "merits questions." *Baker*, 701 F.3d at 944. The removal question is whether the federal government's directive, through the PIP, that medical records should be digitized and made readily available through the internet is *connected* or *associated* with the injuries the Elkinses allege. At a minimum, there is a connection or association; thus, this removal element is met.

**1.2.2. The Elkinses do not support their slippery slope argument.**

The Elkinses argue against the "relating to" element with a slippery slope argument; they claim that accepting jurisdiction here would necessarily mean accepting jurisdiction over the Hospital "engaging in false advertising on its website; … committing copyright or trademark violations on its website; and … posting defamatory content on its website." ECF No. 17 p. 13. To address the principle of this slippery slope argument head on, the Court can ignore for the moment that false advertising, copyright violations, and trademark violations already involve federal law, and would thus establish jurisdiction because they involve a federal question. *See* 15 U.S.C. § 1125(a) (prohibiting false advertising); 17 U.S.C. § 101 *et seq.* (copyright law); 15 U.S.C. § 1114 (prohibiting trademark infringement).

Even so, the Elkinses' argument here fails. No one claims that the Hospital *has a website* because of the federal government, or because of the PIP. Rather, through the PIP, Hospitals were to make health care records readily accessible on its website, through user-friendly patient portals. There is a connection or association between that federal directive and subsequent claims that a ubiquitous piece of Facebook code tracked patients' online activities. The Elkinses' slippery slope argument has no basis, because there is not even an arguable connection between having health care records readily accessible through the internet and, say, misappropriating some other entity's trademark and publishing it on the internet.

"Judges and lawyers live on the slippery slope of analogies; they are not supposed to ski it to the bottom." R. Bork, The Tempting of America 169 (1990) (quoted in *Sebelius*, 567 U.S. 519, 617 (2012) (Ginsburg, J., concurring in part)). The Elkinses' slippery slope argument presents no basis to deny jurisdiction here.

#### 1.2.3. The out-of-circuit cases the Elkinses cite apply a narrower test than this Circuit.

The Elkinses claim to have a "mountain of authority" disapproving of the removal of Meta Pixel cases. ECF No. 17 p. 2. The Elkinses have not identified any such case from within this Circuit (nor could the Hospital locate one). Notable in this regard, however, at least some of the out-of-circuit cases the Elkinses cite have explicitly found that they follow a different, narrower legal standard than the relatively expansive standard the Seventh Circuit employs in cases like *Baker*. *See, e.g., Doe, I v. BJC Health Sys.*, 2023 WL 369427, at *5 n.6 (E.D. Mo. Jan. 10, 2023) (noting that *Baker* "broadened federal officer removal" standards beyond the Eighth Circuit's test, which continues to require a causal connection rather than mere connection or association). And yet the Elkinses repeatedly rely on this authority that consciously applies a different test than the one in this Circuit. *See* ECF No. 17 p. 2 n.1; p. 8; p. 9; and p. 10.

The vast majority of the Elkinses' "mountain of authority" comes from California district courts. *See* ECF No. 17 p. 2 n.1. Yet again, the Ninth Circuit applies a different, narrower standard than the Seventh Circuit adopted in *Baker*. *See, e.g., Silver Peaks, LLC v. Caremore Health Plan*, 2021 WL 3269977, at *2 (C.D. Cal. July 29, 2021) ("In the Ninth Circuit, federal officer removal is available to a defendant under § 1442(a) if"—among other elements—"there is a *causal nexus* between the removing party's actions, taken pursuant to a federal officer's directions …" (emphasis added)). This "causal nexus" requirement is acknowledged in the Pixel cases the Elkinses cite. *See Heard v. Torrance Mem'l Med. Ctr.*, 2023 WL 2475544, at *1 (C.D. Cal. Mar. 13, 2023) (requiring "a causal nexus between [the removing party's] actions, taken pursuant to a federal officer's directions, and plaintiff's claims"). Again, a causation requirement was explicitly rejected in *Baker,* 962 F.3d at 943.

Needless to say, this Court should decide removal based on the Seventh Circuit's standard, rather than district courts from other Circuits than apply a different, narrower standard. Despite relying on *BJC Health* and cases from California district courts throughout their brief, the Elkinses did not disclose to the Court or address the fact that these cases explicitly apply a different standard than the one prevailing in this Circuit.[4]

In contrast, the cases that have approved of removal of this type of case have applied the same "connection or association" test adopted in *Baker*. *See UPMC*, 2020 WL 4381675, at *6 ("There is plainly a *connection or association* between UPMC's website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability" (emphasis added)); *ProMedica Health*, 2020 WL 7705627, at *3 (quoting and approving *UPMC*'s conclusion: "There is plainly a *connection or association* between [the health care provider's] website management and marketing strategies and the Meaningful Use program" (emphasis added)).

This Court must follow *Baker*'s relatively expansive approach to this element, not the Elkinses' out-of-circuit cases that apply a narrower standard.

**1.3. The Hospital has colorable federal defenses.**

The final requirement for removal under this statute erects a low bar and merely requires that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. California*, 489 U.S. 121, 129-30 (1989); *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) ("We therefore do not require the officer virtually to win his case before he can have it removed" (cleaned up)).

[4] The Elkinses go further—they request an award of attorney fees based on the Hospital supposedly "ignoring" these out-of-circuit cases that apply a different legal standard than the Seventh Circuit.

The Hospital's Removal Notice listed four colorable defenses: (1) the Hospital did not violate any HIPAA duties; (2) certain privacy standards are preempted under HIPAA; (3) that the Hospital's relationship with HHS is inherently federal; and (4) the dormant Commerce Clause. ECF No. 1 ¶¶ 36–39. All four qualify as "colorable defenses" in this context. *See UPMC*, 2020 WL 4381675, at *6–7 (holding that these four defenses qualify under the removal statute).

The Elkinses briefing here is nonresponsive. They say there is no private right of action under HIPAA, and they did not assert a standalone HIPAA count. ECF No. 17 pp. 14–15. But quite clearly, the Elkinses repeatedly rely on HIPAA standards throughout their complaint, and argue that the Hospital's alleged violation of those standards results in liability. The Hospital disagrees with the Elkinses' interpretation of HIPAA, and intends to argue that no HIPAA violation occurred. "To assert that a federal statute does *not* impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute *does* impose other obligations that may shield the federal officer against civil suits." *Mesa*, 489 U.S. at 130 (emphasis original). "Both are equally defensive and equally based in federal law." *Id.*

Regarding HIPAA preemption, the Elkinses note that HIPAA involves conflict preemption, not field preemption. ECF No. 17 p. 16. This is another non-sequitur; all that is required is a colorable defense, which the Hospital has asserted in line with ordinary notice pleading standards. Federal officer removal does not require the Hospital to lay out a winning summary judgment argument at the outset of the case.

Regarding the third defense of the Hospital's relationship with HHS—*see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)—the Elkinses make a merits argument that there is no conflict between the federal government's directives and "the implementation of the Pixel." ECF No. 17 p. 17. Through the

PIP, the federal government has directed that hospitals help build a nationwide ecosystem of electronic health records; across the nation, hospitals face lawsuits that are nearly identical to the Elkinses' as a result. This raises a direct challenge to the Hospital's relationship with HHS, and the federal government's push for accessible electronic records.

Finally, the Elkinses claim there is no colorable dormant Commerce Clause challenge because they limited their class definition to Indiana citizens. The Elkinses' argument ignores that people from outside Indiana can still view and interact with the Hospital's website; a ruling that impacts the Hospital's website design and structure would have impacts beyond Indiana's borders. This argument also ignores that the Elkinses originally asserted the exact same claims and legal theories as a nationwide class. *See* Original Compl. *Elkins v. Southeastern Indiana Health Management Inc.*, case no. 1:23-cv-765 ECF No. 1-1 at 39 (S.D. Ind. May 4, 2023) ("Plaintiffs bring this nationwide class action …"). The Zeigler plaintiffs—relying on word-for-word the same legal claims and theories—seek a nationwide class, acknowledging the federal nature of this dispute (like the Elkinses did originally, before they amended their pleading, twice, to attempt to avoid the result). *See* ECF No. 20-1 ¶ 139. To be sure, the Elkinses exerted substantial efforts, and caused substantial delays in this case, by dismissing their own case, then refiling, all while attempting to artfully plead around the federal nature of this dispute. But this type of artful pleading is not cognizable under federal officer removal standards. *Rodas*, 656 F.3d at 616–17.

All four issues present colorable defenses, so removal is appropriate. *See UPMC*, 2020 WL 4381675, at *6–7.

**2. The Elkinses have presented a substantial federal issue.**

In the alternative, this case raises substantial federal issues, meaning removal is also appropriate under 28 U.S.C. § 1331. Federal jurisdiction over a state law claim will lie if a federal issues is: [1] necessarily raised; [2] actually disputed; [3] substantial; and [4] capable of resolution in federal court without disrupting the federal-state balance approved by congress. *Gunn v. Minton,* 568 U.S. 251 (2013).

The Elkinses' Complaint repeatedly raises alleged HIPAA violations, and claims the Hospital is liable for alleged injuries as a result of the alleged violations. The Hospital disputes the Elkinses' HIPAA allegations. This is a substantial question of federal law, one that is hotly contested in federal forums. *See, e.g., Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (finding Facebook code did not collect "protected health information" from medical websites visited by plaintiffs, thus no HIPAA violation). *See also*, HHS, Protecting the Privacy and Security of Your Health Information When Using Your Personal Cell Phone or Tablet, (available at https://www.hhs.gov/hipaa/%20for-professionals/privacy/guidance/cell-phone-hipaa/index.html) (last accessed August 4, 2023) ("[t]he HIPAA Rules generally *do not* protect the privacy or security of your health information when it is accessed through or stored on your personal cell phones or tablets").

The subject matter of this case—the interplay between federal regulations and Pixel tracking code—is present in federal cases pending across the nation. As noted above, the Elkinses originally acknowledged the federal nature of this dispute by seeking a nationwide class—*see* Original Compl. *Elkins v. Southeastern Indiana Health Management Inc.,* case no. 1:23-cv-765 ECF No. 1-1 at 39 (S.D. Ind. May 4, 2023)—which the Zeigler plaintiffs continue to seek. *See* ECF No. 20-1 ¶ 139.

Given its importance, to patients and hospitals alike, these HIPAA issues should be decided in a federal forum, rather than on an ad hoc basis in state courts. It would do more damage to the federal-state balance to remand this case—where a state court would have a principal task of interpreting federal HIPAA standards—than to retain jurisdiction so that this federal court may adjudicate these aspects of federal law.

**3. The Elkinses have not argued any persuasive basis for attorney fees.**

Finally, the Elkinses request fees under 28 U.S.C. § 1447(c). Regardless of this Court's ultimate ruling on the Elkinses' motion for remand, there is no basis to award fees. "[A] plaintiff has every right to do all that is possible, within the bounds of ethical constraints, to ensure that his case remains in state court; a defendant has an equally defensible privilege to do all it can, under like constraints, to push or pull the action into federal court." *Davis v. Biomet Orthopedics, LLC*, 2016 WL 1637991, at *4–5 (N.D. Ind. Apr. 25, 2016).

The Seventh Circuit analogizes this question to a familiar question under section 1983 qualified immunity claims: "As a general rule, if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). "By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees." *Id.*

Indiana federal courts generally award fees in three circumstances, none of which are present here. First, fees are appropriate if removal was based on factual claims—like a supposed diversity of citizenship—that the removing party did not investigate prior to removal. *VPG Grp. Holdings LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2020 WL 6323485, at *2–3 (S.D. Ind. Oct. 28, 2020);

*Halfwassen ILPK, LLC v. Inland Logistics Port-Kingsbury, LLC*, 2015 WL 728339, at *3 (N.D. Ind. Feb. 18, 2015).

Second, courts will impose fees if removal is procedurally unfounded. *Gonzalez v. Landes Foods, LLC*, 2018 WL 1626540, at *2 (S.D. Ind. Apr. 4, 2018) (forum selection clause mandated state court); *Elsharif v. Abed*, 2022 WL 2866225, at *2 (N.D. Ind. July 21, 2022) (removal untimely); *Faust v. Menard, Inc.*, 2012 WL 4815415, at *1 (N.D. Ind. Oct. 9, 2012) (untimely); *Brooks v. USA Track & Field, Inc.*, 2023 WL 3016831, at *7 (S.D. Ind. Mar. 7, 2023) (USATF misrepresented content of complaint, then misrepresented that it was seeking diversity jurisdiction).

Finally, courts award fees if directly on-point case law from this Circuit or this District forecloses a removal argument. *See, e.g., Butler v. Kohl's Dep't Stores, Inc.*, 2008 WL 1836684, at *4–5 (S.D. Ind. Apr. 23, 2008) (directly on point case from S.D. Ind.); *Raynor v. L. Off. of Keith S. Shindler, Ltd.*, 2021 WL 8269521, at *4–5 (S.D. Ind. Oct. 1, 2021) ("Seventh Circuit law clearly dictated a finding that Plaintiff had not pled the type of injury-in-fact necessary to give him standing to bring his FDCPA claim in federal court").

In contrast, absent a prior dispositive ruling from the Seventh Circuit, fees should not be awarded. *Argent Healthcare Fin. Servs., Inc. v. Crawley*, 2011 WL 2604699, at *5 (N.D. Ind. June 30, 2011) ("the moving parties have not cited any other Seventh Circuit authority that would foreclose Community's basis for removal"); *Cocquyt v. Norfolk S. Corp.*, 2023 WL 2446339, at *5 (N.D. Ind. Mar. 8, 2023) (debatable ICCTA issue); *Doe I v. Certiphi Screening, Inc.*, 2022 WL 4235334, at *3 (S.D. Ind. Sept. 14, 2022) ("our court of appeals hasn't clearly foreclosed Certiphi's position"); *Gaeta v. Mercer Belanger, P.C.*, 2021 WL 5015080, at *2 (N.D. Ind. Oct. 28, 2021) ("case law regarding the lack of jurisdiction developed during the stay"); *Goul v. Combe Inc.*, 2021 WL 3772013, at *5 (S.D. Ind. Aug. 25, 2021) ("dearth of applicable case law and precedent in the Seventh Circuit "); *Perry v.*

*Higgins-Ballas*, 2018 WL 3158510, at *4 (N.D. Ind. June 27, 2018) (even where removal was "questionable," no fees because "there are only district court decisions holding that Indiana law is unsettled"); *Hipps v. Biglari Holdings, Inc.*, 2018 WL 1787949, at *4 (S.D. Ind. Mar. 26, 2018) ("Relevant case law did not clearly foreclose Defendants' basis for removal"); *Marie v. Biomet, Inc.*, 2017 WL 2060655, at *4 (N.D. Ind. May 15, 2017) ("[t]here is no controlling authority on point" for the precise issue presented "and inquiries into similar situations by other courts have resulted in different conclusions."); *Town of Ogden Dunes v. Siwinski*, 2008 WL 1804104, at *6 (N.D. Ind. Apr. 17, 2008) ("While those cases are distinguishable from the facts at hand, it was not such a clear outcome so as to make the Siwinskis removal attempt without reason"); *Antonio v. Wal-Mart*, 2007 WL 2884371, at *8–9 (S.D. Ind. Sept. 27, 2007) (no fees where "District courts in other states, on facts and law differing little from the facts and law before this court, had found" removal appropriate).

The Elkinses have not attempted to make any of these showings that have persuaded Indiana federal courts to award fees under § 1447(c). At a minimum, "District courts in other states, on facts and law differing little from the facts and law before this court, ha[ve] found" removal appropriate, rendering a fee award inappropriate. *Antonio*, 2007 WL 2884371, at *8–9. *See UPMC*, 2020 WL 4381675, at *7; *ProMedica Health*, 2020 WL 7705627, at *2. Indeed, as noted above in **§ 1.2.3**, the vast majority of the Elkinses' out-of-circuit cases explicitly and consciously apply a different, narrower federal officer removal standard than the one prevailing in this Circuit—even though the Elkinses declined to disclose or address that split in authority.

Whether this Court remands or not, the Court should deny the Elkinses' fee request.

## Conclusion

The Hospital respectfully requests that the Court deny the Elkinses' motion to remand, deny the Elkinses' request for attorney fees regardless, and accept jurisdiction over this case.

Dated: August 9, 2023

Respectfully submitted

*Matthew T. Albaugh*
Peter S. French, Atty. No. 16716-49
Matthew T. Albaugh, Atty. No. 23293-49
Vivek R. Hadley, Atty. No. 36260-53
Taft Stettinius & Hollister LLP
One Indiana Square, Ste. 3500
Indianapolis, IN 46204
(317) 713-3500 – phone
(317) 713-3699 – fax
pfrench@taftlaw.com
malbaugh@taftlaw.com
vhadley@taftlaw.com

*Attorneys for Southeastern Indiana Health Management Inc d/b/a Columbus Regional Hospital*